# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § | EP-18-CR-3156-PRM |
| JOSE TRINIDAD CALDERON-AVALOS, Defendant. | § § § § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

On this day, the Court considered Defendant Jose Trinidad Calderon-Avalos's [hereinafter "Defendant"] "Motion to Dismiss" (ECF No. 24) [hereinafter "Motion"], filed on December 7, 2018; the Government's "Response in Opposition to Defendant's Motion to Dismiss Indictment" (ECF No. 28) [hereinafter "Response"], filed on December 18, 2018; and Defendant's "Reply to Government's Response in Opposition to Defendant's Motion to Dismiss Indictment" (ECF No. 29) [hereinafter "Reply"], filed on December 28, 2018, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion should be denied for the reasons that follow.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In August 2018, the Department of Homeland Security ("DHS")

personally served a notice to appear on Defendant.  Mot. Ex. A (Notice to Appear), at 2.  In the notice to appear, DHS alleged that Defendant was a native and citizen of Mexico who had entered the United States without being admitted or paroled and charged Defendant as subject to removal pursuant to 212(a)(A)(i) of the Immigration and Nationality Act.  *Id.*  In addition, the notice to appear ordered that Defendant appear before an Immigration Judge ("IJ") on a date "[t]o be set" and a time "[t]o be set" to show why he should not be removed from the United States.  *Id.*  After receiving service of the notice to appear, Defendant was detained by DHS.  Mot. Ex. B (Notice of Custody Determination).  According to the Government, DHS filed the notice to appear with the Immigration Court in Philadelphia, Pennsylvania.  Resp. 1.  The Government also alleges that the Immigration Court in Pennsylvania issued a Notice of Hearing containing the date, time, and place of the immigration hearing and served it on Defendant.  Resp. 2.[1]  Defendant does not dispute this allegation.

On August 20, 2018, Defendant attended his removal hearing and was

_____

[1] The Government attached a copy of a Notice of Hearing dated September 11, 2017, as Exhibit B to its Response, but has not provided a copy of the 2018 Notice of Hearing.  According to the Government, it is in the process of obtaining a copy of this notice from the Executive Office of Immigration Review.  Resp. 2 n.2; Resp. Ex. B (Notice of Hearing in Removal Proceedings).  In his Motion and Reply, Defendant does not address whether a Notice of Hearing was served.

2

ordered to be removed from the United States to Mexico.  Mot. Exs. C (Audio
Recording of Removal Proceedings in York, Pennsylvania Immigration Court
on August 20, 2018 [hereinafter "Recording"]), D (Order of the Immigration
Judge).  At the removal hearing, the IJ explained to Defendant and other
respondents that they have the right to appeal the IJ's decision within thirty
days of the IJ's decision.  Mot. Ex. C (Recording), at Track 3.  Furthermore,
the IJ explained to the respondents that if they waive appeal, then they
cannot change their minds and later file an appeal.  *Id.*  When asked if
Defendant wanted to appeal, Defendant replied, "No."  *Id.* at Track 6.
Defendant's waiver of his appeal was recorded in the IJ's Order.  Mot. Ex. D
(Order of the Immigration Judge).

On September 4, 2018, Defendant was removed from the United States
to Mexico.  Mot. Ex. E.  The Government alleges that, in October 2018,
Defendant reentered the United States and was found approximately 37
miles east of the Fort Hancock, Texas, Port of Entry.  Compl., Oct. 3, 2018,
ECF No. 1.  On October 24, 2018, Defendant was charged in the instant
Indictment with illegally reentering the United States after having
previously been removed in violation of 8 U.S.C. § 1326(a).  Indictment, ECF
No. 10.  On December 7, 2018, Defendant filed the instant Motion in which

Defendant seeks to dismiss the Indictment.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Furthermore, pursuant to Federal Rule of Criminal Procedure 12(b)(3), a party must raise by pretrial motion a defect in the indictment, including a failure to state an offense "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).

In the Fifth Circuit, "[t]he propriety of granting a motion to dismiss an indictment under [Federal Rule of Criminal Procedure] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (quoting *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977)). "If a question of law is involved, then consideration of the motion is generally proper." *Id.*

## III.   ANALYSIS

Defendant moves for dismissal of the Indictment.  First, Defendant

argues that because the notice to appear filed in connection with Defendant's removal proceedings lacked a hearing time for the removal hearing, the removal proceedings never commenced, the IJ had no jurisdiction to conduct the removal proceedings, and the removal order is void. Mot. 1, 3. Accordingly, Defendant argues, the Government cannot prove that Defendant was "removed" as matter of law. *Id.* Second, Defendant seeks to collaterally attack the removal order pursuant to 8 U.S.C. § 1326(d). As Defendant's Motion primarily involves a question of law, the Court may properly consider the Motion pursuant to Federal Rule of Criminal Procedure 12.

The Court will first address Defendant's argument that the IJ lacked jurisdiction before considering Defendant's collateral attack on the removal order. After due consideration, the Court is of the opinion that Defendant's Motion should be denied.

## A.    Jurisdiction of the Immigration Court

An illegal reentry conviction pursuant to § 1326(a) requires that the accused has "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding. . . ." 8 U.S.C. § 1326. Defendant argues that he

cannot be convicted of illegal reentry pursuant to § 1326(a) because "the Government cannot prove that he was 'removed.'" Mot. 3. Specifically, Defendant argues that the notice to appear filed in Defendant's removal proceedings failed to satisfy the requirement, pursuant to § 1229(a) and *Pereira v. Sessions*, that a notice to appear contain the time of the removal proceedings. *Id.* at 3–4 (citing *Pereira v. Sessions*, 138 S. Ct. 2105, 2116 (2018)). Therefore, Defendant argues, jurisdiction did not vest under 8 C.F.R. § 1003.14(a). *Id.* at 5. Accordingly, Defendant argues, the IJ had no authority to issue an order of removal and Defendant's subsequent removal was unlawful. *Id.*

Evaluating Defendant's argument requires understanding the interplay between the statutory definition of "notice to appear" (8 U.S.C. § 1229(a)), the jurisdictional provision for removal proceedings in the Code of Federal Regulations (8 C.F.R. § 1003.14(a)), and the Supreme Court's decision in *Pereira v. Sessions*. Accordingly, the Court will summarize the relevant statutory and regulatory provisions, the Supreme Court's decision in *Pereira v. Sessions*, and relevant case law before and after *Pereira*. Following this background, the Court will analyze Defendant's claim.

## 1. Statutory and Regulatory Framework

The Executive Office for Immigration Review is an office within the Department of Justice and is "subject to the direction and regulation of the Attorney General." 6 U.S.C. § 521. Congress has delegated to the Attorney General the power to establish regulations as deemed necessary to carry out the functions exercised by the Executive Office for Immigration Review. 8 U.S.C. § 1103(g). Within the Executive Office for Immigration Review are "immigration judges" ("IJs") who are administrative judges appointed by the Attorney General to conduct certain proceedings, including removal proceedings pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1101; *see* 8 U.S.C. § 1229a(a)(1) (providing that IJs shall conduct removal proceedings); 8 U.S.C. § 1229a(a)(3) (providing that removal proceedings before an IJ are the "sole and exclusive procedure for determining whether an alien may be . . . removed from the United States").

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") revised the Executive Office for Immigration Review procedures. Pub. L. No. 104-208, 110 Stat. 3009–546. Relevant here, a new section, codified as 8 U.S.C. § 1229, was added to govern "[i]nitiation of removal proceedings." *Id.* at 3009–587, § 239. Section 1229(a) requires that

a "notice to appear" be served on the alien, specifying the following:

    (A) The nature of the proceedings against the alien.

    (B) The legal authority under which the proceedings are conducted.

    (C) The acts or conduct alleged to be in violation of law.

    (D) The charges against the alien and the statutory provisions alleged to have been violated.

    (E) The alien may be represented by counsel and the alien will be provided (i) a period of time to secure counsel under subsection (b)(1) and (ii) a current list of counsel prepared under subsection (b)(2).

    (F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 1229a of this title.

    (ii) The requirement that the alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.

    (iii) The consequences under section 1229a(b)(5) of this title of failure to provide address and telephone information pursuant to this subparagraph.

    **(G)(i) The time and place at which the proceedings will be held.**

    (ii) The consequences under section 1229a(b)(5) of this title of the failure, except under exceptional circumstances, to appear at such proceedings.

8 U.S.C. § 1229(a)(1) (emphasis added).  Significantly, 8 U.S.C. § 1229(a) requires that the notice to appear contain the time at which the proceedings will be held.  8 U.S.C. § 1229(a)(1)(G)(i).  The notice to appear replaced a document titled "order to show cause," which had been used to initiate deportation proceedings prior to IIRIRA.  *See* STEEL ON IMMIGRATION LAW

§ 14:3 (2018 ed.).

Shortly after Congress passed IIRIRA, the Attorney General promulgated regulations implementing IIRIRA. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed Reg. 10312 (Mar. 6, 1997). The regulations added a new paragraph governing "[j]urisdiction and commencement of proceedings," codified as 8 C.F.R. § 1003.14. *Id.* at 10332. Pursuant to 8 C.F.R. § 1003.14(a), "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [Immigration and Naturalization] Service." A "charging document" is defined as follows:

> Charging document means the written instrument which initiates a proceeding before an Immigration Judge. . . . For proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien.

8 C.F.R. § 1003.13. Furthermore, the regulations require that "[t]he charging document must include a certificate showing service on the opposing party pursuant to § 1003.32." 8 C.F.R. § 1003.14.

In addition, the regulations amended the provision governing contents of an "order to show cause," codified in 8 C.F.R. § 1003.15, to also govern the

contents of a "notice to appear." 62 Fed. Reg. 10332. Pursuant to 8 C.F.R. § 1003.15—unlike the statutory definition of "notice to appear" in § 1229(a)(1)—the regulatory definition of "notice to appear" does not include the requirement that the notice contain the time and place of the removal proceedings. *Compare* 8 C.F.R. § 1003.15(b), (c), *with* 8 U.S.C. § 1229(a)(1)(G)(i). Furthermore, 8 C.F.R. § 1003.18 governs the "[s]cheduling of cases" and provides that, in removal proceedings, "the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18(b). The regulations further provide that if such details are not in the notice to appear, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.*

### 2. Case Law Prior to *Pereira v. Sessions*

Prior to *Pereira v. Sessions*, several circuits held that the statutory requirements of a notice to appear are satisfied even if the notice to appear fails to include the date and time of the removal hearing, so long as the date and time are later provided in a subsequent notice of hearing. *Herrera-Orozco v. Holder*, 603 F. App'x 471, 474 (6th Cir. 2015) (collecting cases).

10

The Fifth Circuit held in *Gomez-Palacios v. Holder*, in the context of a petition for review of the BIA's denial of a petitioner's motion to reopen proceedings following an in absentia removal order, "an NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent NOH." *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009) (citing *Mehdi v. Gonzales*, 216 F. App'x 412, 414 (5th Cir. 2007)). More relevant to the question here, but again in the context of a petition for review of a BIA decision, the Fifth Circuit in *Mehdi v. Gonzales* rejected the petitioner's argument that omission of date and time on a notice to appear deprived the IJ of jurisdiction. 216 F. App'x at 414. Because a notice of hearing with the date and time was later provided and the petitioner appeared at the hearing, the petitioner had received actual notice and was not prejudiced by the notice to appear's omission of the date and time. *Id.* Accordingly, the court held that the petitioner's "argument that the NTA deprived the Immigration Court of jurisdiction lack[ed] merit." *Id.*

### 3. *Pereira v. Sessions*

In *Pereira v. Sessions*, the Supreme Court addressed the "narrow question" at the intersection of [two] statutory provisions," namely,

§ 1229b(d)(1)(A), the stop-time rule provision, and § 1229(a), the notice to appear provision. *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). The "stop-time rule" pursuant to § 1229b(d)(1)(A) is relevant to cancellation of removal, which provides discretionary relief for nonpermanent residents who are subject to removal proceedings but have accrued ten years of continuous physical presence in the United States. *Id.* (citing 8 U.S.C. § 1229b(b)(1)). Specifically, the stop-time rule provides that continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1)(A).

The Supreme Court held that a notice to appear in the context of the stop-time rule must include the time and place of the removal proceedings. *Pereira*, 138 S. Ct. at 2110. Specifically, the Court held, "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule." *Id.*

The Court's reasoning relied on the plain text of the stop-time rule statute, which explicitly incorporates the statutory definition of "notice to appear":

> By expressly referencing § 1229(a), the [stop-time] statute specifies where to look to find out what "notice to appear" means. Section 1229(a), in turn, clarifies that the type of notice "referred

12

> to as a 'notice to appear' " throughout the statutory section is a "written notice . . . specifying," as relevant here, "[t]he time and place at which the [removal] proceedings will be held." § 1229(a)(1)(G)(i).

*Id.* at 2114. Apart from the statutory text, the Court found support for its interpretation in a neighboring statutory provision that governs the securing of counsel. *Id.* at 2114–15 (citing § 1229(b)(1)). That provision, the Court reasoned, suggests that a notice to appear must include the time-and-place information in order to provide an adequate opportunity to secure counsel. *Id.* In addition, the Court supported its conclusion with "common sense," specifically, the intuition that "[c]onveying such time-and-place information to a noncitizen is an essential function of a notice to appear, for without it, the Government cannot reasonably expect the noncitizen to appear for his removal proceedings." *Id.*

Though the Court held that a notice to appear must include the time and place of the removal hearing in order to trigger the stop-time rule, the Court did not address whether a notice to appear must include such information in order to serve as a valid charging document and vest jurisdiction in an Immigration Court. Accordingly, the Supreme Court's holding in *Pereira* does not directly apply to the issue at hand.

### 4. Case Law After *Pereira*

Following *Pereira*, the Fifth Circuit has not yet issued an opinion regarding whether *Pereira* requires that a court dismiss a § 1326 indictment when the underlying removal order was initiated by a notice to appear lacking a time and date. However, the Fifth Circuit recently suggested that *Pereira*'s rule should be construed narrowly. In *Mauricio-Benitez*, the Fifth Circuit upheld a Board of Immigration Appeals ("BIA") decision dismissing the petitioner's appeal of his motion to reopen his removal proceedings and rescind his *in absentia* removal order. *Mauricio-Benitez v. Sessions*, 908 F.3d 144 (5th Cir. 2018). In doing so, the court applied the "highly deferential abuse-of-discretion standard" appropriate to review of BIA denials of motions to reopen. *Id.* at 147 (quoting *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 203 (5th Cir. 2017)). The court reasoned that the petitioner's failure to correct an error in his address and, therefore, receive notice of a removal hearing did not provide grounds to reopen the removal proceeding. *Id.* at 148 (first citing *Mejia-Urbina v. Sessions*, 712 F. App'x 469, 469–70 (5th Cir. 2018) and then citing *Osorio-Hernandez v. Lynch*, 602 F. App'x 194, 194 (5th Cir. 2015)). In a footnote, the court emphasized that *Pereira* "does not impact this conclusion." *Id.* at 148 n.1. Specifically, the court reasoned, the

14

"narrow question" in *Pereira* "was whether a NTA that does not specify the time or place of the removal hearing triggers the 'stop-time rule' for purposes of a cancellation of removal." *Id.* Therefore, the court concluded, "[b]ecause the issues in this case pertain only to reopening, *Pereira*'s rule regarding cancellation is inapplicable." *Id.* In support of this proposition, the court cited *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *3 (W.D. Okla. Sept. 25, 2018), a case in which the district court denied a defendant's motion to dismiss a § 1326(a) indictment after finding *Pereira* distinguishable. *Id.* Thus, though not directly addressing the question of an IJ's jurisdiction following *Pereira*, the Fifth Circuit in *Mauricio-Benitez* suggested that *Pereira*'s holding is narrow.

Other appellate courts as well as the Board of Immigration Appeals (BIA) have declined to extend *Pereira* to the context of an IJ's jurisdiction. In *Matter of Bermudez-Cota*, the Board of Immigration Appeals ("BIA") held that a notice to appear need not include the time and place of the removal hearing in order to vest jurisdiction with an IJ, so long as the information is later sent to the alien. 27 I. & N. Dec. 441, 447 (BIA 2018). In *Hernandez-Perez v. Whitaker*, the Sixth Circuit rejected the petitioner's argument that the Immigration Court lacked jurisdiction over the original removal

proceedings.  911 F.3d 305, 314–15 (6th Cir. 2018).[2]  The court considered the BIA's "binding interpretation of regulations" and agreed with the BIA that "*Pereira* is an imperfect fit in the jurisdictional context and it does not mandate a different conclusion than the one already reached by this court and all our sister circuits."  *Id.*

Similarly, in *Karingithi v. Whitaker*,[3] the Ninth Circuit held that an Immigration Judge had jurisdiction over removal proceedings even though the initial notice to appear did not specify the time and date of the proceedings because the charging document satisfied the regulatory requirements.  913 F.3d 1158, 1160 (9th Cir. 2019).  In reaching its conclusion, the court reasoned that "the regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction. And for their part, the regulations make no reference to § 1229(a)'s definition of a 'notice to appear.'"  *Id.*

Meanwhile, district courts across the nation have confronted the

---

[2] Specifically, after the BIA denied the petitioner's motion to reopen his removal proceedings and the petitioner petitioned for review to the Sixth Circuit, the petitioner argued that jurisdiction never properly vested with the immigration judge, the Board of Immigration Appeals, or the Sixth Circuit. *Id.*

[3] The Ninth Circuit's decision was in the context of a petition for review of an order of the BIA affirming an IJ decision rejecting petitioner's application for relief from removal.

question at issue in the instant Motion: whether a § 1326 indictment must be dismissed when the underlying removal order was initiated by a notice to appear lacking the time and date of the removal hearing. Courts are divided. *See U.S. v. Lozano*, No. 4:18-CR-522, 2019 WL 224178, at *10–12 (S.D. Tex. Jan. 15, 2019) (collecting cases supporting dismissal of the indictment in Appendix A and collecting cases supporting denial of the motion to dismiss in Appendix B). Indeed, district courts are divided not only across the country, but within this district.[4]

---

[4] At least three courts in this district have concluded that the omission of the removal hearing's time and date in the notice to appear does not mean that the Immigration Court lacked jurisdiction. *United States v. Arriaga-Rojas*, No. 1:17-CR-109-LY, 2019 WL 360673, at *6 (W.D. Tex. Jan. 29, 2019) (Yeakel, J.); *United States v. Rosales-Fuentes*, No. SA-18-CR-290-XR, 2019 WL 202820, at *2 (W.D. Tex. Jan. 14, 2019) (Rodriguez, J.); *United States v. Arroyo*, No. EP-18-CR-02049-DCG, 2018 WL 6729029, at *7 (W.D. Tex. Dec. 21, 2018) (Guaderrama, J.).

Most of the courts in this district have concluded that the IJ lacked jurisdiction when the notice to appear failed to specify the time and date of the removal hearing. Of the courts determining that the IJ lacked jurisdiction, some held that that the defendant must nonetheless satisfy the requirements to collaterally attack removal proceedings pursuant to § 1326(d). *United States v. Niebla-Ayala*, No. EP-18-CR-3067-KC, 2018 WL 6378019, 342 F.Supp.3d 733 (W.D. Tex. Dec. 5, 2018) (Cardone, J.); *United States v. Hernandez-Lopez*, No. 5:18-CR-625(1)-DAE, 2018 WL 6313292 (W.D. Tex. Dec. 3, 2018) (Ezra, J.) ("[A]ssuming, without deciding, that [the defendant's] jurisdictional arguments are correct . . . a § 1326 defendant must still satisfy the requirements of § 1326(d), which [the defendant] cannot do."); *United States v. Vargas-Osorio*, No. 1:18-CR-289-RP, 2018 WL 6201957, at *8 (W.D. Tex. Nov. 28, 2018) (Pitman, J.) (holding that the defendant satisfied § 1326(d) requirements because "[e]nforcing an invalid

17

In sum, prior to *Pereira*, the Fifth Circuit held that a notice to appear lacking a time and date, when followed by a notice of hearing with a time and date, does not divest the IJ of jurisdiction. *Mehdi v. Gonzales*, 216 F. App'x 412, 414 (5th Cir. 2007); *see Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009). In the aftermath of *Pereira*, appellate court decisions have indicated that *Pereira*'s requirement that a notice to appear contain the time and date of a removal hearing is not applicable to the question of an IJ's jurisdiction. Finally, district courts are divided on the question of whether a court must dismiss a § 1326 indictment when the notice to appear filed in the prior removal proceeding lacked a time and date.

5.    **Statutory Analysis**

It is uncontested that the notice to appear filed in Defendant's case did not state the time and date of the removal hearing, but merely stated that

---

removal order to make [the defendant] eligible for criminal prosecution under § 1326 would offend due process standards of fundamental fairness"); *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076, at *10 (W.D. Tex. Nov. 20, 2018) (Garcia, C.J.). Meanwhile, other courts held that because the IJ lacked jurisdiction, the removal order was void and, therefore, the defendant need not satisfy the requirements pursuant to § 1326(d). *United States v. Albarran-Fuentes*, No. EP-18-CR-03069-FM (W.D. Tex. Dec. 19, 2018) (Montalvo, J.); *United States v. Leon-Gonzalez*, No. EP-18-CR-2593-DB, 2018 WL 6629655 (W.D. Tex. Nov. 20, 2018) (Briones, J.); *United States v. Cruz-Jimenez*, No. A-17-CR-00063-SS, 2018 WL 5779491, at *1 (W.D. Tex. Nov. 2, 2018) (Sparks, J.).

Defendant must appear at a date and time "[t]o be set." Mot. Ex. A. Accordingly, the notice to appear filed in Defendant's case is not a "notice to appear under section 1229(a)" as defined in *Pereira*. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2110 (2018). From this premise, Defendant argues that the notice to appear failed to vest jurisdiction in the Immigration Court and that the removal order was void. *See generally* Mot.

However, after due consideration, the Court is of the opinion that the notice to appear filed in Defendant's case did not divest the IJ of jurisdiction. First, the statute governing notices to appear does not govern what is required to vest jurisdiction in the IJ, as the plain text is silent with respect to jurisdiction and the statutory structure suggests that Congress did not intend a failure to include the time and date of a hearing in the notice to appear to strip the IJ of authority. Second, unlike the stop-time rule provision considered in *Pereira*, the regulatory provision concerning jurisdiction does not require a notice to appear to state the time of the hearing. Therefore, filing a notice to appear without the time of the hearing does not mean the Immigration Court lacks jurisdiction. Finally, the Court's interpretation of the statute and regulations is consistent with the reasonable interpretation by the BIA in *Matter of Bermudez-Cota*.

### a.   Section 1229(a) does not govern jurisdiction.

#### i.   Congress did not expressly state when jurisdiction vests in the Immigration Court.

First, nothing in the statute, by its specific terms, states that a notice to appear must include the time and date of the removal hearing in order to vest jurisdiction in the Immigration Court. The parties do not cite, and the Court is unaware of, any statutory provision expressly governing when jurisdiction vests in the Immigration Court, or otherwise specifying what must be included in a charging document filed in the Immigration Court.

Rather, without specifying when jurisdiction vests, Congress broadly granted authority to IJs to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a. Furthermore, Congress delegated to the Attorney General the power to establish regulations related to the functioning of Immigration Courts, not excluding the requirements for jurisdiction to vest. *See* 8 U.S.C. § 1103(g).[5] Thus,

---

[5] In full, section 1103(g)(2) provides the following:

> The Attorney General shall establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section.

Congress did not provide what is required for jurisdiction to vest in the Immigration Court but instead granted the authority to determine any such jurisdictional requirements to the Attorney General.

        ii.    <u>Defendant's arguments to the contrary are unpersuasive.</u>

Defendant argues that the title of § 1229, "Initiation of Removal Proceedings," and the legislative history of § 1229(a) suggest that § 1229(a) governs the requirements of a charging document. Mot. 7.

Defendant first argues, "The title, 'Initiation of Removal Proceedings,' and surrounding subsections indicates § 1229 applies to the start of proceedings and defining a charging document." *Id.* Based on the title of § 1229, it is clear that Congress intended § 1229 to govern initiation of removal proceedings. However, Defendant does not demonstrate that "initiation" of the proceedings means vesting of subject matter jurisdiction or

---

Courts have determined that this broad language includes the power to define the jurisdiction of Immigration Courts. *See, e.g., United States v. Castro-Gomez*, No. 1:18-CR-187-RP, 2019 WL 503434, at *6 (W.D. Tex. Feb. 8, 2019) ("Instead, Congress delegated the power to define the contours of an immigration judge's authority to the Attorney General, granting broad authority to 'establish such regulations . . . as the Attorney general determines to be necessary for carrying out this section.'" (citing 8 U.S.C. § 1103(g)(1), (2)); *United States v. Garcia-Gonzalez*, No. 15-CR-00109-BLF-1, 2019 WL 343473, at *3 (N.D. Cal. Jan. 28, 2019) ("The INA grants the Attorney General full authority to define the jurisdiction of the immigration courts. 8 U.S.C. § 1103(g)(2). It does not otherwise dictate how such jurisdiction can vest.").

otherwise defines the authority of the Immigration Court. Accordingly, the Court is not persuaded that Congress's intent for § 1229 to govern the initiation of removal proceedings demonstrates that Congress intended § 1229 to govern the jurisdiction of the Immigration Court.

The Court is also not persuaded by Defendant's argument regarding legislative history. Defendant explains that in enacting IIRIRA, Congress adopted the language from the predecessor statute's definition of an "Order to Show Cause" in the definition of a "Notice to Appear" in § 1229(a). *Id.* Before IIRIRA was passed, orders to show cause were used as charging documents. *Id.* Accordingly, Defendant argues, "[b]y replacing the order to show cause with the notice to appear, it follows that the notice to appear— consistent with the text, title, and context of § 1229—became a charging document." *Id.*

However, the fact that a notice to appear can serve as a charging document does not necessarily compel the conclusion that Congress intended § 1229(a) to govern what information a notice to appear must contain to serve as charging document and vest jurisdiction in the Immigration Court. Section 1229(a) does not state that it governs the requirements of a charging document or what information must be filed in the Immigration Court to

vest jurisdiction. Rather, § 1229(a) focuses on providing notice of the hearing to the alien, simply stating that "written notice . . . shall be given in person to the alien (or if personal service is not practicable, through service by mail to the alien or the alien's counsel of record, if any)."

        iii.    <u>The remedy of rescission of in absentia removal orders suggests Congress did not intend a notice to appear's lack of a time and date to divest the IJ of jurisdiction.</u>

In addition, the statutory structure suggests that Congress did not intend § 1229(a) to govern jurisdiction. Rather, through the remedy of rescission of a removal order, Congress contemplated a specific, statutory remedy for a notice to appear that fails to list the time or place of the removal hearing and results in an in absentia removal order due to the alien's absence at the hearing.

One of the provisions analyzed by the Supreme Court in *Pereira*, § 1229a(b)(5)(C), provides the procedure for rescission of an in absentia removal order and suggests that Congress did not intend a defective notice lacking the time and date of a hearing to simply divest the Immigration Court of jurisdiction. Rather, § 1229a(b)(5)(C) provides that if an alien receives an in absentia order but did not receive the required written notice pursuant to § 1229(a), the alien may seek rescission of the in absentia order

23

by filing a motion to reopen and establishing that "the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." § 1229a(b)(5)(C). In full, § 1229a(b)(5)(C) provides:

> Such an order may be rescinded *only*—
>      (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1)), or
>      (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.
>
> The filing of the motion to reopen described in clause (i) or (ii) shall stay the removal of the alien pending disposition of the motion by the immigration judge.

8 U.S.C. § 1229a(b)(5)(C) (emphasis added). Thus, Congress handled possible notice deficiencies pursuant to § 1229(a) in the context of in absentia orders by providing the exclusive remedy of rescission through a motion to reopen.

In *Pereira*, the Supreme Court opined that the phrase "in accordance with paragraph (1) or (2) of section 1229(a)" in the rescission provision, 8 U.S.C. § 1229a(b)(5)(C), "refers to notice satisfying, at a minimum, the time-and-place criteria defined in § 1229(a)(1)," *Pereira*, 138 S. Ct. at 2118.[6] It

_____

[6] In *Pereira*, the Supreme Court examined two separate provisions "relating

follows that if an alien fails to receive a notice including the time-and-place criteria and is ordered removed in absentia, then the removal order may be rescinded pursuant to a motion to reopen demonstrating the same.[7] Thus, in

---

to in absentia removal orders" that referenced the notice requirements pursuant to § 1229(a):

> 1229a(b)(5)(A), which provides that a noncitizen may be removed in absentia if the Government has provided "written notice required under paragraph (1) or (2) of section 1229(a)"; and § 1229a(b)(5)(C)(ii), which provides that, once an in absentia removal order has been entered, the noncitizen may seek to reopen the proceeding if, *inter alia*, he "demonstrates that [he] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."

*Pereira*, 138 S. Ct. at 2117–18. The Government had argued that the provisions use "the distinct phrases 'required under' and 'in accordance with' as shorthand for a notice that satisfies § 1229(a)(1)'s requirements, whereas the stop-time rule uses the phrase 'under section 1229(a)' to encompass a different type of notice that does not necessarily include the information outlined in § 1229(a)(1)." *Id.* at 2118. The Supreme Court rejected that argument, reasoning that "[t]he far simpler explanation, and the one that comports with the actual statutory language and context, is that each of these three phrases refers to notice satisfying, at a minimum, the time-and-place criteria defined in § 1229(a)(1)." *Id.* at 2118. Accordingly, in its reasoning, the Court suggested that the references to notice in the in absentia provisions require notice containing the time and place of the removal hearing.

[7] The Court recognizes that this conclusion may be read to conflict with the Fifth Circuit's footnote in its recent opinion in *Mauricio-Benitez v. Sessions*. *See* 908 F.3d 144, 148 (5th Cir. 2018) (finding *Pereira* to be inapplicable in context of motion to rescind in absentia removal order despite fact that the notice to appear ordered the petitioner to appear at hearing at a date and time "to be set" because "cancellation and reopening are two entirely

25

creating the specific remedy of rescission through the procedure of a motion to reopen, it appears that Congress contemplated the very situation at issue here—a statutorily-deficient notice to appear—and declined to simply render the removal order void for lack of jurisdiction. Rather, an alien who does not receive notice of the time of the hearing, fails to appear at the hearing, and receives an in absentia removal order, may file a motion to reopen and seek to have the removal order rescinded.

Courts interpret statutes "to 'give effect, if possible, to every clause and word of a statute.'" *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). If the Court were to accept Defendant's interpretation of § 1229(a), the statutory provision governing rescission of in absentia removal orders would be rendered inoperative in the circumstance explicitly recognized by the Supreme Court.

Defendant claims that a failure to include the time and date of a hearing in a notice to appear divests the Immigration Court of jurisdiction

---

different proceedings under immigration law"). However, § 1229a(b)(5)(C) notably references "notice" and not a "notice to appear," suggesting that rescission may only be appropriate if the alien fails to receive any notice of the time and place, and not available if the alien receives a deficient notice to appear and later receives notice of the time and date through a notice of hearing.

and renders the removal order void. If Defendant's claim were true, it would not be necessary for an alien to file a motion to reopen or seek rescission of an in absentia removal order based on failure to receive notice of a hearing time because, according to Defendant, the removal order would simply be void. This is contrary to the Supreme Court's suggestion that the rescission remedy is available to aliens who establish that they did not receive "notice satisfying, at a minimum, the time-and-place criteria defined in § 1229(a)(1)." *Pereira*, 138 S. Ct. at 2118. Accordingly, the statutory framework, as interpreted by the Supreme Court, suggests that Congress intended a specific remedy for aliens who failed to appear at their removal hearing because they were never notified of the time and date of the hearing. Therefore, the Court is hesitant to interpret the statute in a way that would render null the remedy of rescission for the circumstances when an alien fails to receive notice of the time and date of the hearing and is ordered removed in absentia. Therefore, the statutory context of § 1229(a)—namely, the rescission provision for in absentia removal orders—suggests that § 1229(a) does not govern jurisdiction.

### b. The Jurisdiction Provision in the Regulations Does Not Require a Notice to Appear to Specify the Time of Hearing.

For the reasons explained above, the Court is of the opinion that § 1229(a) does not govern the requirements of a charging document or the information required to be filed in the Immigration Court in order to vest jurisdiction. Rather, the only apparent limitations on jurisdiction and a charging document's requirements are found in the regulations. Notably, 8 C.F.R. § 1003.14(a) provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [Immigration and Naturalization] Service." [8]

---

[8] Courts have reached different conclusions about the meaning of "jurisdiction" in 8 C.F.R. § 1003.14(a). *See United States v. Zapata-Cortinas*, 351 F. Supp. 3d 1006 (W.D. Tex. 2018) (collecting cases). For the purposes of this Order, the Court assumes without deciding that "jurisdiction" in 8 C.F.R. § 1003.14(a) refers to the Immigration Court's authority over removal proceedings, akin to subject-matter jurisdiction in federal courts. However, analysis by other courts suggests that 8 C.F.R. § 1003.14(a) does not govern the Immigration Court's authority, but merely provides a procedural rule. *See, e.g., United States v. Arroyo*, No. EP-18-CR-02049-DCG, 2018 WL 6729029, at *7 (W.D. Tex. Dec. 21, 2018) ("... Regulation 1003.14(a), a procedural rule, is not a grant of authority and does not otherwise ... speak to the immigration judges' 'subject-matter jurisdiction' over removal proceedings. . . ." (internal citations omitted)); *United States v. Rivera Lopez*, No. 1:18-CR-00381 (LMB), 2018 WL 6834363, at *7 (E.D. Va. Dec. 28, 2018) ("[T]he best reading of section 1003.14(a) is that although it imposes a procedural requirement on immigration authorities' initiation of removal proceedings, that requirement is not "jurisdictional" in the formal sense, and a defect in a notice to appear does not necessarily render a resulting

However, the plain text and structure of the regulations make clear that the time and date of removal hearing need not be included in the charging document in order to vest jurisdiction. Thus, the regulatory provision governing jurisdiction is distinct from the statutory provision governing the stop-time rule considered in *Pereira*.

i. <u>The regulation governing jurisdiction does not incorporate § 1229(a).</u>

First, unlike the stop-time rule provision considered in *Pereira*, the regulation governing jurisdiction does not incorporate the statutory requirements of a notice to appear. The stop-time rule provision explicitly references the definition of "notice to appear" by stating that an alien's continuous presence stops "when the alien is served a notice to appear *under section 1229(a) of this title.*" 8 U.S.C. § 1229b (emphasis added). Thus, the stop-time provision expressly incorporates the substantive requirements in the statutory definition of "notice to appear." *See Pereira*, 138 S. Ct. at 2117 (concluding that "the word 'under' provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by

_____

deportation order void <u>ab initio</u>."). Under either reading of 8 C.F.R. § 1003.14(a)—limiting the authority of an Immigration Court or providing a procedural rule—the result is the same: failure to specify the time of the removal hearing in the notice to appear filed in the Immigration Court does not render the resulting removal order void.

§ 1229(a)").

In contrast, the jurisdiction provision in the federal regulations refers to a "charging document," 8 C.F.R. § 1003.14(a), which the regulations define as a "written instrument which initiates a proceeding before an Immigration Judge," specifying that such documents include a notice to appear, as well as two other types of documents, *id.* § 1003.13. Neither the jurisdictional provision nor the definition of "charging document" explicitly references the substantive requirements of a "notice to appear" pursuant to 1229(a). *See id.* §§ 1003.13, 1003.14(a).

      ii. <u>The regulatory definition of a notice to appear controls what is required of a notice to appear to vest jurisdiction.</u>

The regulatory definition of a notice to appear controls in the context of the regulatory provision governing jurisdiction—not the statutory definition. This does not conflict with the statute because the statute does not dictate what is required of a notice to appear to confer authority on the Immigration Court.

Section 1229(a) makes clear that the "notice to appear" definition in § 1229(a) is definitional in the context of the statutory section but is silent with respect to the regulations. Section 1229(a) indicates that the written

30

notice described in § 1229(a) is *"in this section* referred to as a 'notice to appear.'" 8 U.S.C. § 1229(a)(1) (emphasis added). Based on this text, the Supreme Court concluded that "when the term 'notice to appear' is used elsewhere in the statutory section, including as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Pereira*, 138 S. Ct. at 2116. Thus, the logic of *Pereira* is limited to the statutory section and does not carry over to the jurisdictional provision in the regulations.

Furthermore, pursuant to 8 C.F.R. § 1003.15, the Code of Federal Regulations provides its own, different substantive requirements for what a notice to appear must include. Unlike the statutory definition of a notice to appear provided by 8 U.S.C. 1229(a), the regulations do not require that the notice to appear include the time of the hearing. *See* 8 C.F.R. § 1003.15. These separate substantive requirements for a notice to appear suggest that, when promulgating the regulations, the agency did not intend to incorporate the statutory definition of a notice to appear. Rather, the regulatory definition of a notice to appear suggests that a charging document need not specify the time of the removal hearing in order to vest jurisdiction in the Immigration Court.

Defendant argues that the statutory definition "trumps the regulations that the Government claims allow a notice to appear to omit the hearing date." Mot. 8. Of course, if the statute required a notice to appear filed in the Immigration Court to specify the time of the hearing in order for the Immigration Court to have authority over the removal hearing, the regulations would conflict with the statute and the statute would control. However, there is no such conflict.

Rather, a notice to appear has multiple functions: it acts as a charging document that vests jurisdiction in the Immigration Court and it provides an alien with notice of when and where to appear. *See Pereira*, 138 S. Ct. at 2116 n.7 ("Even if a notice to appear functions as a 'charging document,' that is not mutually exclusive with the conclusion that a notice to appear serves another equally integral function: telling a noncitizen when and where to appear."). The regulatory definition of a notice to appear and the statutory definition of a notice to appear do not conflict in the context of a notice to appear's function as charging document vesting jurisdiction in the Immigration Court because the statute is silent on what is required of a notice to appear to serve that function.

The Court recognizes the intuition that a notice to appear should have the same definition in the statute and in the regulations, and across its dual functions of notifying an alien where and when to appear and serving as a charging document. Indeed, "it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Pereira*, 138 S. Ct. at 2115 (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 571 (2012)). However, this rule of construction can be overcome where, as here, the reference to a term includes a different definition and context. *Cf. Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 575–76 (2007) ("There is, then, no effectively irrebuttable presumption that the same defined term in different provisions of the same statute must be interpreted identically. Context counts." (internal citations omitted)).

The Court also recognizes that the regulations can be interpreted to suggest that the notice to appear used to provide notice and used as a charging document are the same document. *See* 8 C.F.R. § 1003.14 (providing that "[t]he charging document must include a certificate showing service on the opposing party pursuant to § 1003.32"). And, in practice, the notice to appear used as a charging document may often be the same

document as the notice to appear used to provide notice of the removal

hearing. However, as another district court articulated in response to this

concern, "practical reality is not legal reality." *United States v. Garcia-*

*Gonzalez*, No. 15-CR-00109-BLF-1, 2019 WL 343473, at *4 (N.D. Cal. Jan.

28, 2019).[9] Despite the dual functions of a notice to appear, and the intuition

---

[9] The court further reasoned as follows:

> Because the Attorney General has the authority to prescribe the jurisdictional requirements for immigration courts, it was well within his authority to determine that a notice to appear need not meet the statutory requirements in order to vest such jurisdiction. Ostensibly, the Attorney General could have chosen any reasonable means for vesting jurisdiction. That he chose to require a notice to appear does not alone indicate that he intended to circumscribe his own authority by (silently) incorporating the statutory requirements into his definition. Indeed, given the strong evidence to the contrary, such an interpretation of the regulations is unwarranted. *Cf. Duke Energy Corp.*, 549 U.S. at 575–76 (2007) ("There is, then, no effectively irrebuttable presumption that the same defined term in different provisions of the same statute must be interpreted identically. Context counts." (citation omitted)).

*Id.* The Sixth Circuit also recognized the "common-sense discomfort in adopting the position that a single document labeled 'Notice to Appear' must comply with a certain set of requirements for some purposes, like triggering the stop-time rule, but with a different set of requirements for others, like vesting jurisdiction with the immigration court." *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314 (6th Cir. 2018). The court reasoned that there were, however, also common-sense problems with adopting the opposite position: "[I]mporting *Pereira*'s holding on the stop-time rule into the jurisdictional context would have unusually broad implications. According to the Government, 'almost 100 percent' of NTAs issued during the three years

34

that the same document should have the same requirements across functions, the text and structure of the statute and regulations dictate that the requirements differ. Section 1229(a) remains silent on what is required of a charging document or to vest jurisdiction in the Immigration Court. Accordingly, the statutory definition of a notice to appear does not strictly conflict with what the agency determined was required to vest jurisdiction in the Immigration Court—a charging document that need not include the time and date.

This is distinct from the conflict between the regulatory provision and statutory provision present in *Pereira*. In *Pereira*, the Supreme Court held that a notice to appear in the statute's stop-time rule provision must include the time and date to trigger the stop-time rule, even though the regulations stated "that a 'notice to appear' served on a noncitizen need only provide 'the time, place and date of the initial removal hearing, where practicable.'" *Pereira*, 138 S. Ct. at 2111 (quoting 62 Fed. Reg. 10332 (1997)). Accordingly, the Supreme Court interpreted a *statutory* provision and held that the statutory definition controls. Here, the statute is silent on what is required

---

preceding *Pereira* did not include the time and date of the proceeding." *Id.* (citing *Pereira*, 138 S. Ct. 2111).

of a charging document in order to vest jurisdiction. Thus, when interpreting a regulatory provision regarding charging documents and the vesting of jurisdiction, using the regulation's definition of a charging document creates no conflict between the regulation and the statute.

### c. The Court's Interpretation is Consistent with the Decision by the Board of Immigration Appeals.

In addition, the Court's interpretation is consistent with the interpretation by the Board of Immigration Appeals ("BIA"), which the Court determines is entitled to deference. *See Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018). "An administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation." *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461–463 (1997)). "An interpretation of an ambiguous statute may also receive substantial deference." *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984)).

"[T]he BIA is entitled to significant deference when it interprets its own ambiguous regulations." *Gomez v. Lynch*, 831 F.3d 652, 655 (5th Cir. 2016) (citing *Auer*, 519 U.S. at 461). "*Auer* deference is typically strong; the agency's interpretations, even if relatively informal (as in [a]

nonprecedential, single-member BIA opinion), are given 'controlling weight.'" *Id.* at 655–56 (quoting *Belt v. EmCare, Inc.*, 444 F.3d 403, 415 (5th Cir. 2006)). "[D]eference is unwarranted when there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question as where the agency's interpretation conflicts with a prior interpretation." *Id.* at 656 (internal quotations omitted) (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). In recent opinions, both the Sixth Circuit and Ninth Circuit appeared to apply *Auer* deference to the BIA's decision in *Matter of Bermudez-Cota. Hernandez-Perez v. Whitaker*, 911 F.3d 305, 312 (6th Cir. 2018) (citing *Auer* and affording "substantial deference" to the BIA's interpretation of the INA and accompanying regulations); *Karingithi v. Whitaker*, 913 F.3d 1158, 1161 (9th Cir. 2019) ("We . . . defer to the Board's interpretations of ambiguous regulations unless they are 'plainly erroneous,' 'inconsistent with the regulation,' or do 'not reflect the agency's fair and considered judgment.'" (quoting *Lezama-Garcia v. Holder*, 666 F.3d 518, 525 (9th Cir. 2011) (citing *Auer*, 519 U.S. at 461))).

Courts accord *Chevron* deference to the BIA's interpretations of the

Immigration and Nationality Act.[10] *Holder v. Martinez Gutierrez*, 566 U.S. 583, 591 (2012) (holding that the BIA's "position prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best"); *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[T]he BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" (quoting *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987))). Pursuant to *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

Here, the question presented by Defendant's Motion involves interpretation of both a statute and regulations. However, the Court need not decide whether *Auer* or *Chevron* deference is appropriate because the BIA's interpretation survives the higher scrutiny pursuant to *Chevron*.

As the Court explained in Part III.A.5.a of this Order, the statute is

---

[10] Though *"Chevron* [has been] called into question by various Justices," it "remains binding Supreme Court precedent." *Voices for Int'l Bus. & Educ., Inc. v. Nat'l Labor Relations Bd.*, 905 F.3d 770, 780 (5th Cir. 2018) (Ho, J., concurring) (first citing *Pereira*, 138 S. Ct. at 2120–21 (Kennedy, J., concurring); then citing *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2712–14, (2015) (Thomas, J., concurring); and then citing *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149–58 (10th Cir. 2016) (Gorsuch, J., concurring)).

silent regarding vesting of jurisdiction and what is required of a charging document. Section 1229(a) governs the requirements of a notice to appear for providing notice to the alien but does not provide that those requirements must be satisfied to confer jurisdiction in the IJ. Accordingly, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843.

In *Matter of Bermudez-Cota*, the Board of Immigration Appeals ("BIA") held that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets the requirements of section 239(a) of the [Immigration and Nationality] Act [(8 U.S.C. § 1229(a))], so long as a notice of hearing specifying this information is later sent to the alien." 27 I. & N. Dec. 441, 447 (BIA 2018). The BIA disagreed with the respondent's argument that "a notice to appear that fails to specify the time or place of his hearing cannot vest jurisdiction with the Immigration Judge." *Id.* at 443–45. In particular, the BIA reasoned that *Pereira* is distinguishable because it narrowly addressed the requirements of a notice to appear in the context of triggering the stop-time rule. *Id.* at 443. Furthermore, the BIA reasoned that "[t]he regulation does not specify what information must be contained in

a 'charging document' at the time it is filed with an Immigration Court, nor does it mandate that the document specify the time and date of the initial hearing before jurisdiction will vest." *Id.* at 445. In addition, the BIA reasoned that the regulatory provision governing what information must be contained in a notice to appear "does not mandate that the time and date of the initial hearing must be included in that document." *Id.* Finally, the BIA agreed with the appellate court opinions decided prior to *Pereira* which held that the statutory notice requirements are satisfied even if the notice to appear lacks the time and date of the hearing, so long as a notice of hearing with the time and date of the hearing is later sent. *Id.* at 447 ("We agree with the Fifth, Seventh, Eighth, and Ninth Circuits that a two-step notice process is sufficient to meet the statutory notice requirements.").

The Court concludes that the BIA's "answer is based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. For the reasons explained in Part III.A.5.a of this Order, § 1229(a) does not govern jurisdiction. The statute does not expressly require that a notice to appear meet the requirements of § 1229(a) to vest jurisdiction. Indeed, the rescission provision for in absentia removal orders suggests that, when an in absentia removal order is entered, a notice to appear's failure to meet the

requirements of § 1229(a) is remedied only through rescission of the removal order, not lack of jurisdiction. Furthermore, as explained in Part III.A.5.b of this Order, any provision governing when an IJ's jurisdiction vests is only found in the regulations, which do not require that the notice to appear specify the time and date of the hearing in order to serve as a valid charging document that vests jurisdiction. Therefore, in light of the text and structure of the statute and regulations, the Court concludes that the BIA's interpretation is reasonable. Accordingly, the BIA's interpretation is entitled to deference.

## B. Collateral Challenge to Removal Order Pursuant to § 1326(d)

A defendant who is charged with illegal reentry pursuant to § 1326 may collaterally attack the underlying removal order. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 838–39 (1987). The Fifth Circuit has formulated a three-part test that must be met in order to succeed in such an attack. *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003). The defendant must establish the following: "1) the prior hearing was 'fundamentally unfair;' 2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and 3) the procedural deficiencies caused the alien actual prejudice." *Id.*

The Fifth Circuit's test was "effectively codified" in 8 U.S.C. § 1326(d).

*United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (quoting

*United States v. Lopez–Vasquez*, 227 F.3d 476, 483 n.13 (5th Cir. 2000)).

Section 1326(d) requires that the alien demonstrate the following: "(1) the

alien exhausted any administrative remedies that may have been available

to seek relief against the order; (2) the deportation proceedings at which the

order was issued improperly deprived the alien of the opportunity for judicial

review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C.

§ 1326(d). The defendant must establish all three prongs; if the defendant

fails to establish one of the three prongs, "the Court need not consider the

others." *Mendoza-Mata*, 322 F.3d at 832.

## 1. Defendant Must Satisfy the § 1326(d) Requirements to Successfully Challenge His Underlying Removal Order.

Defendant argues that Defendant can challenge his § 1326 prosecution

without satisfying the § 1326(d) requirements because the "putative removal

order here was void ab initio because the immigration court had no power to

order [Defendant] removed." Mot. 12. Accordingly, Defendant contends,

"[t]he indictment should be dismissed because the Government cannot prove

he reentered the United States after having been 'denied admission,

excluded, deported, or *removed.*'" Mot. 13 (quoting 8 U.S.C. § 1326(a)(1)). For the reasons set forth in Part III.A of this Order, the Court determines that Defendant's removal order was not void for lack of jurisdiction. However, even assuming Defendant's removal order was jurisdictionally-defective, Defendant may only collaterally attack the removal order by meeting the requirements set forth in § 1326(d).

Several courts in this district have held that, even if the underlying removal order was void for lack of jurisdiction, a defendant must satisfy the requirements of § 1326(d) to collaterally attack a removal order underlying a § 1326 prosecution.[11] Other courts have held that a defendant need not challenge the removal order pursuant to § 1326(d) because a jurisdictionally-defective notice to appear means the Government cannot establish an

---

[11] *See United States v. Hernandez-Lopez*, No. 5:18-CR-625(1)-DAE, 2018 WL 6313292, at *3 (W.D. Tex. Dec. 3, 2018) ("Removal orders that suffer jurisdictional defects can still serve as the basis for a § 1326 prosecution, and a § 1326 defendant must still satisfy the requirements of § 1326(d). . . ."); *United States v. Sandoval-Cordero*, 342 F. Supp. 3d 722, 731 (W.D. Tex. 2018) ("[D]espite the Court's conclusion that [the defendant]'s 2017 removal order was invalid, he still must satisfy § 1326(d) for the Court to dismiss the indictment."); *United States v. Zapata-Cortinas*, No. SA-18-CR-00343-OLG, 2018 WL 6061076, at *8 (W.D. Tex. Nov. 20, 2018) ("[T]he Court concludes that (i) a removal order that suffers jurisdictional defects may serve as the basis for a § 1326(a) prosecution, and (ii) a § 1326 defendant must satisfy the requirements of § 1326(d) in order to collaterally attack the underlying removal order.").

element of illegal reentry.[12]  For the reasons that follow, the Court joins the courts that have determined that a defendant must satisfy the § 1326(d) requirements in order to collaterally attack the removal order underlying an illegal reentry prosecution.

In *United States v. Mendoza-Lopez*, the Supreme Court addressed "whether an alien who is prosecuted under 8 U.S.C. § 1326 for illegal entry following deportation may assert in that criminal proceeding the invalidity of the underlying deportation order." 481 U.S. at 830.  The Court held that "Congress did not intend the validity of the deportation order to be contestable in a § 1326 prosecution." *Id.* at 837.  However, the Court also held that, pursuant to the constitutional requirement of due process, "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be

---

[12] *See United States v. Lopez-Hernandez*, No. 3:18-cr-2906-FM-1 (W.D. Tex. Dec. 14, 2018) ("[T]he underlying removal order is void and an illegal reentry conviction cannot be sustained.  Consequently, the court need not consider the § 1326(d) factors, as it is impossible to collaterally attack a removal order with no legal or binding force."); *United States v. Leon-Gonzalez*, No. EP-18-CR-2593-DB, 2018 WL 6629655, at *3 (W.D. Tex. Nov. 20, 2018) ("[The defendant] need not satisfy section 1326(d)'s strict requirements because the immigration judge lacked jurisdiction from the outset."); *United States v. Cruz-Jimenez*, No. A-17-CR-00063-SS, 2018 WL 5779491, at *7 (W.D. Tex. Nov. 2, 2018) ("[T]he Government cannot meet an element of illegal reentry under § 1326, and the indictment against [the defendant] must be dismissed.").

made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* at 839.

In reaching the conclusion that Congress did not intend for the validity of a deportation order to be contestable in a § 1326 prosecution, the Court considered the plain text of § 1326 and separate statutory provisions limiting the judicial review of deportation orders. Specifically, the Court reasoned that the language of § 1326 did not suggest any limitation that "a deportation is an element of the offense defined by § 1326 only if it is 'lawful.'" *Id.* at 834. Furthermore, the Immigration and Nationality Act included "sections that limit judicial review of deportation orders," thus indicating that "Congress considered and addressed some of the various circumstances in which challenges to deportation orders might arise and did not mention § 1326." *Id.* at 836–37.

Over thirty years later, the reasoning of *Mendoza-Lopez* remains applicable. In enacting § 1326(d), Congress provided no requirement that an underlying deportation order be "lawful." Rather, the statute's title— "Limitation on collateral attack on underlying deportation order"—and plain text make clear that collateral attacks of underlying deportation orders are

limited:

> In a criminal proceeding under this section, *an alien may not challenge* the validity of the deportation order described in subsection (a)(1) or subsection (b) *unless* the alien demonstrates that—
>
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>>
>> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>>
>> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added). As evident from its text, § 1326(d) provides the exclusive mechanism by which an alien accused of illegal reentry may challenge the underlying removal order. *Id.* § 1326(d) ("[A]n alien may not challenge the validity of the deportation order . . . unless the alien demonstrates" the three requirements.). Thus, *Mendoza-Lopez* and the plain language of § 1326(d) suggest that a removal order need not be lawful in order to support an illegal reentry prosecution.

The fact that Defendant is challenging the subject-matter jurisdiction of the Immigration Court that issued the removal order does not relieve Defendant of meeting § 1326(d)'s requirements. Defendant argues that he need not satisfy the § 1326(d) requirements because the Immigration Court lacked jurisdiction. Mot. 13. Specifically, the removal order was "void ab

46

initio" because the Immigration Court had no power to order Defendant removed. Mot. 12. Therefore, Defendant contends, Defendant was not "removed" and the removal element for a § 1326 prosecution cannot be satisfied. *Id.* In support of Defendant's argument, Defendant invokes the principle that "[s]ubject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Id.* at 11 (citing *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region,* 558 U.S. 67, 81 (2009)). It is true that the requirement of subject matter jurisdiction cannot be waived before the original court or the court of appeals. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) ("[A] party does not waive the [subject matter jurisdiction] requirement by failing to challenge jurisdiction early in the proceedings. Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion.").

However, here, Defendant is not challenging the Immigration Court's subject matter jurisdiction in an Immigration Court proceeding or in a direct appeal of the Immigration Court's removal order. Rather, Defendant is mounting a collateral attack on the Immigration Court's removal order. *See*

*Collateral Attack*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("An attack on a

judgment in a proceeding other than a direct appeal; esp., an attempt to

undermine a judgment through a judicial proceeding in which the ground of

the proceeding (or a defense in the proceeding) is that the judgment is

ineffective."). Defendant does not establish that the jurisdiction of an

Immigration Court may be challenged in a collateral attack outside of the

requirements of § 1326(d). Indeed, the Supreme Court has held that a

party's ability to collaterally attack the subject-matter jurisdiction of a prior

judgment is limited:

> A party that has had an opportunity to litigate the question of
> subject-matter jurisdiction may not, however, reopen that
> question in a collateral attack upon an adverse judgment. It has
> long been the rule that principles of res judicata apply to
> jurisdictional determinations—both subject matter and personal.

*Ins. Corp. of Ireland*, 456 U.S. at 702 n.9 (citing first *Chicot County Drainage

Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); and then *Stoll v. Gottlieb*,

305 U.S. 165 (1938)).

Furthermore, it is not clear that the rules regarding waiver applicable

to the subject matter jurisdiction of a federal court are applicable to an

agency's jurisdiction. *See City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290,

297–98 (2013) ("Because the question—whether framed as an incorrect

48

application of agency authority or an assertion of authority not conferred—is always whether the agency has gone beyond what Congress has permitted it to do, there is no principled basis for carving out some arbitrary subset of such claims as 'jurisdictional.'"). At least one court in this district has recognized that "courts should not reflexively extend to agencies the 'very real division between the jurisdictional and nonjurisdictional that is applicable to courts.'" *United States v. Arriaga-Rojas*, No. 1:17-CR-109-LY, 2019 WL 360673, at *5 (W.D. Tex. Jan. 29, 2019) (quoting *Arlington*, 569 U.S. at 297). The court further reasoned that the difference between a federal district court's subject matter jurisdiction and agency jurisdiction "explains why a litigant in federal district court *cannot* forfeit a challenge to subject matter jurisdiction, but a petitioner attacking agency action *can* forfeit a challenge to agency jurisdiction." *Id.* (quoting *Campos-Luna v. Lynch*, 643 F. App'x 540, 542–43 (6th Cir. 2016)).

Accordingly, Defendant does not adequately explain why his collateral attack on his removal order need not satisfy the requirements of § 1326(d). Therefore, despite Defendant's claim that challenges to subject matter jurisdiction should be treated differently, the Court is of the opinion that Defendant must satisfy the requirements of § 1326(d) to successfully

challenge his removal order. *See United States v. Castelan-Jaimes*, 575 F. App'x 253, 254 (5th Cir. 2014) (per curiam) (not published) (holding that although "the BIA [did] not have the authority to order the removal of an alien in the first instance," the defendant failed to satisfy the requirements for collaterally challenging the BIA's removal order and, therefore, the removal order could serve as a basis for a § 1326 conviction).

### 2.   Defendant Fails to Satisfy the Requirements of § 1326(d).

As previously stated, in order to successfully collaterally attack a prior removal order, a defendant must demonstrate that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).  In addition, the Fifth Circuit requires that the procedural deficiencies caused the alien actual prejudice." *Mendoza-Mata*, 322 F.3d at 832.  The defendant must establish all three prongs; if the defendant fails to establish one of the three prongs, "the Court need not consider the others." *Id.*

### a.   Fundamental Fairness

"Fundamental fairness is a question of procedure." *United States v.*

50

*Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015) (quoting *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002)). "Removal hearings are civil proceedings, not criminal; therefore, procedural protections accorded an alien in a removal proceeding are less stringent than those available to a criminal defendant." *Lopez-Ortiz*, 313 F.3d at 230 (citing *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999)).

The Supreme Court has made it clear that due process requires only that an alien be provided the following: (1) notice of the nature of the charge; (2) a hearing at least before an executive or administrative tribunal; and (3) a fair opportunity to be heard. *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

Defendant argues that his "[b]eing physically taken to Mexico pursuant to a putative removal order the immigration court had no authority to enter is fundamentally unfair." Mot. 14. Specifically, Defendant argues that he "did not have a fair opportunity to be heard because the hearing was

51

void for lack of jurisdiction." *Id.* Moreover, Defendant contends, "[t]his procedural error is so fundamental that the resulting order cannot support a criminal conviction." *Id.* (internal quotation marks omitted) (quoting *United States v. Lopez-Urgel*, No. 1:18-CR-310-RP, 2018 WL 5984845, at *5 (W.D. Tex. Nov. 14, 2018) (quoting *Mendoza–Lopez*, 481 U.S. at 849 n.17))).

As detailed in Part III.A of this Order, the Court is of the opinion the IJ had jurisdiction over Defendant's removal hearing, despite the failure of the notice to appear to specify a time and date for the removal hearing. Accordingly, the Court disagrees with Defendant's contention that the removal hearing was void for lack of jurisdiction and that Defendant therefore did not have a fair opportunity to be heard. Furthermore, Defendant concedes that he attended his removal hearing. *See* Mot. 2. Additionally, Defendant cites to no facts in the record demonstrating that he was otherwise deprived of notice of the charges against him, a hearing, or a fair opportunity to be heard. Accordingly, the Court is of the opinion that Defendant failed to demonstrate that his removal order is fundamentally unfair pursuant to § 1326(d)(3).

In so holding, the Court need not reach Defendant's remaining arguments regarding the application of § 1326(d). *See Lopez-Ortiz*, 313 F.3d

at 231 ("Having determined that [the defendant's] removal hearing did not violate his right to due process, we need not reach the remaining requirements of our precedents and 8 U.S.C. 1326(d), namely exhaustion of administrative remedies and actual prejudice."). Therefore, the Court is of the opinion that Defendant's collateral challenge to his removal order pursuant to § 1326(d) should be denied.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Jose Trinidad Calderon-Avalos's "Motion to Dismiss" (ECF No. 24) is **DENIED**.

SIGNED this _25_ day of _February_, 2019.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE